**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

JACK ODEM, III                                                              PLAINTIFF
ADC #116620

v.                                        4:22-cv-00122-JM-JJV

DEXTER PAYNE, Director, ADC; *et al.*                      DEFENDANTS

### RECOMMENDED DISPOSITION

     The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr.  Any party may serve and file written objections to this Recommendation.  Objections should be specific and include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

## I.    INTRODUCTION

     Jack Odem, III ("Plaintiff") is a prisoner in the Ouachita River Unit of the Arkansas Division of Correction ("ADC").  He has filed a *pro se* Amended Complaint alleging that while he was in the Cummins Unit Defendants violated his constitutional rights (as protected by 42 U.S.C. § 1983) and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") when they refused to allow him to receive a book entitled *The Ultimate Guide to Rider Waite Tarot* ("*Rider Waite Tarot*").  (Doc. 27.)  Plaintiff brings these claims against Defendants ADC Director Dexter Payne, Warden Gary Musselwhite, Deputy Warden Robert Pierce, Chaplain Jim Babcock, Warden Audrea Culclager, and Mail Room Supervisor Ruthie Robinson in their official and

personal capacities.[1]   (*Id.*)   He seeks injunctive and declaratory relief, as well as $7500 in compensatory, nominal, and punitive damages.  (*Id.*)

Plaintiff has filed a Motion for Partial Summary Judgment on his constitutional, but not RLUIPA claims, and Defendants have responded.  (Docs. 32-36, 48, 52.)  Defendants also have filed a Motion for Summary Judgment, and Plaintiff has responded.  (Docs. 45-47, 53-55.)  After careful consideration and for the following reasons, I recommend Plaintiff's Motion for Partial Summary Judgment be DENIED. Defendants' Motion for Summary Judgment be GRANTED, Plaintiff's claims against the remaining Defendants be dismissed with prejudice, and this case be CLOSED.

## II.    SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its

---

[1] The Doe Defendants were previously dismissed without prejudice. (Doc. 26.)

resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.    FACTS

The following facts are undisputed. The ADC's publication policy in effect during this case was Administrative Directive 20-04. (Doc. 27, Doc. 45-1). Pursuant to this policy, all publications received at ADC units are "subject to inspection and may be rejected when the publication presents a danger to the security, discipline, or good order of the institution or is inconsistent with rehabilitative goals." (Doc. 45-1 at 1.)    In particular, § IV(B) prohibits:

> (5) STTG[2] materials including, but not limited to, codes, signs, symbols, photographs, drawings, training materials and catalogs; and

* * *

> (10) Material that depicts nudity;[3] however, material that includes the depiction of nudity as illustrative of and as part of broader medical, educational, anthropological, or artistic content will not be rejected solely on the basis that the material contains nudity.

(*Id*. at 3.)

Sometime in 2021, Plaintiff ordered *Rider Waite Tarot*. (Doc. 34.) In March 2021, the

---

[2] Security Terrorist Threat Group ("STTG") is defined as: "Any group of inmates that the Division of Correction reasonably believes poses a threat to the security of the institution or the physical safety of other inmates of staff by virtue of the group's nature, purpose or activities." (*Id*. at 2).

[3] "Nudity" is defined as: "A depiction in which genitalia, buttock(s) or female breasts are fully exposed. (*Id*. at 2.) In summary judgment pleadings, Plaintiff argues *Rider Waite Tarot* does not fall under the policy's definition of "sexually explicit" materials. (*Id*. at 2.) But that argument is irrelevant because it is undisputed *Rider Waite Tarot* was rejected because it contained "nudity" and "STTG" symbols, and not because it contained "sexually explicit" materials as defined by the policy.

3

Cummins Unit Mailroom sent notice to Plaintiff that *Rider Waite Tarot* was being sent to the Cummins Unit Publication Review Committee ("Cummins Unit Committee").  (Doc. 54 at 30.)  In April 2021, the Cummins Unit Committee, which included Chaplain Babcock, Deputy Warden Pierce, and two non-parties, determined *Rider Waite Tarot* violated the policy's prohibition against: (1) STTG symbols because it contained drawings of a five-pointed star, which is associated with gang affiliation; and (2) nudity, because it contained drawings of females with fully exposed breasts, and those drawings were not part of a  broader medical, educational, anthropological, or artistic content.  (Doc. 45-2, Doc. 45-3 Doc. 45-4.)  Defendant Warden Culclager approved their decision and sent Plaintiff written notice saying *Rider Waite Tarot* was denied because it contained "Section 4, B, 5: Symbols" and "Section 4, B, 10: Depicts nudity." (Doc. 45-4 at 2.)  Plaintiff appealed that ruling to the ADC Central Office Publication Review Committee ("Central Office Committee").  (*Id.*)

Although the parties have not provided much information on the matter, it appears around this time Plaintiff also ordered a book called the *Kabbalistic Tarot*, which the Cummins Unit Committee rejected because it contained unspecified STTG symbols.  (Doc. 45-5.)  Plaintiff also appealed that ruling.  (*Id.*)

On April 29, 2021, the Central Office Committee, which included four non-parties, agreed *Rider Waite Tarot* violated the ADC's prohibition against STTG symbols and nudity, and they sent written notice of their final decision to Plaintiff.[4]  (Doc. 45-3, Doc. 45-5.)  In contrast, the

---

[4] Plaintiff says after receiving the final decision he choose to have *Rider Waite Tarot* sent back to the publisher. But it was never received. To the extent Plaintiff may be raising a due process claim for the value of his lost book, it is clear he cannot do so in a § 1983 action because the state provides the adequate remedy of allowing him to seek reimbursement from the Arkansas Claims Commission. *See Hudson v. Palmer*, 468 U.S. 517, 533-6 (1984); *Williams v. Campbell*, Case No. 00-3699, 2001 WL 1549545 (8th Cir. Dec. 6, 2001).

Central Office Committee reversed the Cummins Unit Committee's finding that *Kabbalistic Tarot* contained STTG material and allowed Plaintiff to have that publication.  (*Id.*)  And the Central Office Committee also reversed several other findings that publications ordered by other prisoners violated ADC rules.  (*Id.*)

## IV.    ANALYSIS

### A.    Sovereign Immunity, Qualified Immunity, & the Physical Injury Rule

Defendants argue the doctrines of sovereign immunity, qualified immunity, and the physical injury rule prevent Plaintiff from recovering monetary damages.  That is partially correct.[5] But the immunity doctrines and physical injury rule do not bar Plaintiff from obtaining injunctive and declaratory relief, which is the heart of this case.  *See Hamner v. Burls*, 937 F.3d 1171, 1176 (8th Cir. 2019); *Larson v. Kempker*, 414 F.3d 936, 939-40 (8th Cir. 2005); *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004); *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997).  Thus, the issue I must first resolve is whether Defendants are entitled to summary judgment, as a matter of law, on the merits of Plaintiff's constitutional and RLUIPA claims.

---

[5]  Plaintiff cannot recover any damages under RLUIPA.  *See Sossamon v. Texas,* 563 U.S. 227, 293 (2011); *Scott v. Lewis*, No. 20-1105, 2020 WL 625669127 (8th Cir. Oct. 23, 2020).  As to his constitutional claims, the Prison Litigation Reform Act prevents Plaintiff from recovering compensatory damages in the absence of a physical injury.  42 U.S.C. § 1997e(e).  But it does not bar nominal damages or punitive damages.  *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004).  Sovereign immunity prevents Plaintiff from recovering damages from Defendants in their official capacities.  *Larson v. Kempker*, 414 F.3d 936, 939-40 (8th Cir. 2005); *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997).  And qualified immunity prevents him from recovering monetary damages from Defendants in their personal capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).  Thus, if qualified immunity does not apply and Plaintiff prevails on any of his constitutional claims, the most he can recover is $1 in nominal damages and possibly punitive damages, which is unlikely.  *See Schaub v. VonWald*, 638 F.3d 905, 922–23 (8th Cir. 2011) (high standard for punitive damages); *Williams v. Hobbs*, 662 F.3d 994, 1010 (8th Cir. 2011) ($1 is an appropriate award for nominal damages).

**B.    Defendants Payne, Musselwhite, and Robinson**

There is no vicarious liability in § 1983 actions. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (the "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability"). Thus, a prisoner must prove that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.   It is undisputed Defendants Musselwhite and Culclager were not on the Committees that rejected his book.  And there is no other evidence they were personally involved in the decision to prohibit Plaintiff from receiving *Rider Waite Tarot.   See Frevert v. Ford Motor Co*., 614 F.3d 466, 473-74 (8th Cir. 2010) (at the summary judgment stage, a "plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding" in his favor).

Plaintiff says Mailroom Supervisor Robinson sent him the March 2021 notice saying *Rider Waite Tarot* was being sent to the Cummins Unit Committee.   But that notice says it is from the "Cummins Unit Mailroom," without anyone's name or signature.  (Doc. 54 at 1.)  Because there is no evidence Defendants Payne, Musselwhite, or Robinson were personally involved in the decision to reject *Rider Waite Tarot*, I conclude they are entitled to summary judgment.

**C.    Free Speech Claim**

Plaintiff says Defendants violated his First Amendment right to free speech when they rejected *Rider Waite Tarot.* Prisoners have a First Amendment right to receive non-legal publications and photographs. *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989).   But it is not absolute.  Instead, a prison may prevent an inmate from receiving a publication if it is "reasonably related to legitimate penological interests." *Id*.; *Sisney v. Kaemingk*, 15 F.4th 1181, 1190-97 (8th Cir. 2021); *Hum. Rts. Def. Ctr. v. Baxter Cnty., Ark.,* 999 F.3d 1160, 1164 (8th Cir. 2021). When

making this determination, a court must consider:  (1) whether there is a valid, rational connection between the prison regulation and a neutral, legitimate governmental interest; (2) whether alternative means exist for the inmates to exercise the constitutional right; (3) the impact accommodation would have on inmates, guards, and prison resources; and (4) whether ready alternatives exist to the prison regulation.  *Id.*; *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).  The first factor is a "threshold condition that the regulation must satisfy to pass constitutional muster." *Sisney*, 15 F.4th at 1190.  If the threshold is satisfied, the court must then "determine the regulation's constitutionality by balancing the remaining three factors."  *Id.*; *see also Simpson v. Cnty. of Cape Girardeau, Mo.,* 879 F.3d 273, 279 (8th Cir. 2018).  And when doing so, "considerable deference" should be given to prison administrators who are better equipped than the judiciary at making decisions regarding institutional safety, order, and discipline.  *Thornburgh,* 490 U.S. at 408-409.

As to the first factor, the prison has the burden of proving a valid, rational connection between the restriction and a legitimate government interest.  *Thornburgh*, 490 U.S. at 415; *Sisney*, 15 F.4th at 1190-1191.  And, the "governmental objective must be a legitimate and neutral one . . . without regard to the content of the expression."  *Murchison v. Rogers*, 779 F.3d 882, 887 (8th Cir. 2015) (quoting *Turner*, 482 U.S. at 90).  In their sworn declarations, Defendant Pierce and Thomas Burns[6] explain five-pointed stars are commonly associated with gang affiliations; gang members use the symbol to send coded messages and show gang affiliation; and possession of gang symbols can create violence and serious security risks.  (Doc. 45-2, Doc. 45-3.)  They also say inmates use drawings of women's breasts to masturbate which is prohibited by ADC rules;

---

[6] Mr. Burns, who is not a defendant, was a member of the Central Office Committee that affirmed the decision to prevent Plaintiff from receiving *Rider Waite Tarot.*  (Doc. 45-3.)

trade images of nude women in a prohibited "prison economy"; and fight over pictures of nude women which creates security risks to prisoners as well as guards.    (*Id.*)  Further, the Eighth Circuit has recognized tarot cards can be used for "gambling," "trafficking," "psychological control," and promoting or defaming gangs.  *Singson v. Norris*, 553 F.3d 660, 661-62 (8th Cir. 2009).

It is well settled that security, institutional order, and rehabilitation are legitimate penological interests.  *Simpson*, 879 F.3d at 289; *Murphy v. Mo. Dep't of Corr.,* 372 F.3d 979, 986 (8th Cir. 2004); *Dawson v. Scurr*, 986 F.2d 257, 261 (8th Cir. 1993).  Based on the evidence in the record, there is a valid, rational connection between prohibiting the receipt and possible dissemination of *Rider Waite Tarot* (or pages and images removed therefrom) and the ADC's legitimate goals of preventing violence, maintaining order and security, and promoting rehabilitation.   And I find those objectives operate in neutral fashion.  *See Thornburgh*, 490 U.S. at 415-16 (when "prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are neutral").

Plaintiff argues the prohibition against gang symbols and nudity in written publications is irrational and arbitrary because the Cummins Unit allows inmates to watch movies containing such content. *See Turner*, 482 U.S at 90-91 (a "regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational").  But, as explained in the sworn declarations, written materials may be fought over, traded in a prison economy, and used privately to engage in prohibited sexual conduct. The same cannot be said for movies viewed openly within the prison.  *Simpson,* 879 F.3d at 279 (the *Turner/Thornburgh* test does not require "actual proof that a legitimate interest will be furthered by the challenged policy.   The connection between the two need only be objectively

rational"). Accordingly, I conclude Defendants have satisfied their burden as to the first, threshold element.

The second factor is whether Plaintiff has alternative means for exercising his right to free speech. *Thornburgh,* 490 U.S. at 418; *see also Hum. Rts. Def. Ctr. v. Baxter Cnty., AR*, 999 F.3d 1160, 1165 (8th Cir. 2021). It is undisputed the ADC's policy allows Plaintiff to receive other publications that do not threaten the security and order of the prison. *See Sisney*, 15 F.3d at 1193 (the second factor is satisfied if the regulation permits "a broad range of publications to be sent, received, and read"). In fact, it is undisputed the Central Office Committee allowed Plaintiff to receive *Kabbalistic Tarot*, which is another book about tarot cards. Plaintiff says *Rider Waite Tarot* is essential because it provides the "unique" and "revered" interpretation of tarot cards by Mr. A.E. Waite. (Doc. 53 at 6.) But there is no evidence Plaintiff was prohibited from receiving other books explaining Mr. Waite's interpretation of tarot cards that do not contain nudity or STTG symbols.[7] And Plaintiff admits tarot cards are available for individual use in the unit's chapel. (Doc. 54 at 18.) Accordingly I conclude this factor weighs in Defendants' favor. *See Simpson*, 879 F.3d at 280 (alternative means "need not be ideal. . . they need only be available").

The third factor is the impact allowing Plaintiff to have *Rider Waite Tarot* will have on other prisoners, guards, and the allocation of prison resources. *See Thornburgh,* 490 U.S. at 414-18. As previously explained, Defendants' declarations say gang symbols and nude images can be removed from books, shared with other inmates, and traded in a prison economy causing security risks to prison guards and other prisoners. (Docs. 45-2, 45-3.) And, the nude images can be used inappropriately by the inmates causing them to receive disciplinary charges for rule violations.

---

[7] *The Ultimate Guide to Rider Waite Tarot* ordered by Plaintiff was written by Johannes Fiebig and Evelin Burger. (Doc. 45-4.) There is no evidence Plaintiff could not have ordered other books about Waite's interpretation of tarot cards that do not contained STTG symbols or nudity.

*See Sisney*, 15 F.4th at 1193 (the third factor weighed in the prison's favor because sexual material "is likely to find its way through bartering to the prisoner who finds it most sexually stimulating, potentially interfering with rehabilitation"). Plaintiff has offered no contrary evidence. Accordingly, I conclude this factor also weighs in Defendants' favor. *See Turner*, 482 U.S. at 90 ("courts should be particularly deferential to the informed discretion of corrections officials" when "accommodation will have a significant ripple effect on fellow inmates or on prison staff").

The fourth and final factor asks whether there are any "ready" or "easy" alternatives that "accommodate the prisoners' rights at a *de minimis* cost to penological interests." *Turner,* 482 U.S. at 90-91; *Simpson,* 879 F.3d at 281. As explained by the United States Supreme Court, this "is not a least restrictive alternative test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 90-91. Plaintiff says Defendants have the alternative of routinely searching him and his living quarters to ensure that he was not carrying the prohibited images. (Doc. 34, Doc. 35.) But doing so would clearly place more than a *de minimis* burden on prison security personnel. And such searches would be futile if Plaintiff had already given the prohibited images to other prisoners. Finally, the Eighth Circuit has held prisons may censor books "in their entirety" if they contain prohibited material. *Sisney*, 15 F.4th at 1192-93 (upholding rejection of two books because "alternatives such as page-by-page censorship and monitored reading rooms are not obvious, easy alternatives"); *Thornburgh*, 490 U.S. at 419 (1989) (upholding rejection of a publication because removing prohibited pages would be an "administrative inconvenience"). Thus, I agree with Defendants this factor clearly weighs in their favor.

Because Defendants have prevailed on all four factors, I conclude they are entitled to

judgment as a matter of law on Plaintiff's free speech claim.[8] That being said, I realize evaluation of media content is, inherently, a subjective undertaking on which reasonable minds might disagree. And I am sympathetic to Plaintiff's frustration at being denied a publication he ordered. But as explained in the beginning of the analysis, the United States Supreme Court has held wide deference should be given to prison officials when analyzing a free speech claim because they are better equipped than courts in making decisions regarding institutional safety, order, and discipline. Viewing the evidence in this manner, I conclude Plaintiff's First Amendment claim should be dismissed with prejudice.

### D.    Due Process Claim

Plaintiff says Defendants violated his Fourteenth Amendment right to procedural due process when they rejected *Rider Waite Tarot.* Prisoners have a right to receive "minimal procedural safeguards" when publications or mail is rejected by prison officials. *Procunier v. Martinez*, 416 U.S. 396, 417 (1974) (overruled on other grounds by *Thornburgh,* 490 U.S. at 413-14).[9] Thus, an inmate must receive notice a publication has been rejected, a reasonable opportunity to protest that decision, and an appeal to a prison official other than the person who originally

---

[8] Plaintiff also argues the topless women drawings in *Rider Waite Tarot* fall under the ADC's exception for nudity that is "illustrative of" and part of a "broader medical, educational, anthropological, or artistic content." (Doc. 45-1 at 3.) I find no merit to that argument because the exception applies only if the publication is rejected "solely on the basis that the material includes nudity." (*Id.*) And it is undisputed *Rider Waite Tarot* was rejected because it contained nudity <u>and</u> STTG symbols. More importantly, the issue here is not whether Defendants properly complied with the <u>ADC's publication rules</u> because prisoners do not have a constitutional right to enforce compliance with internal prison rules or regulations. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997). Instead, the relevant question is whether Defendants violated the <u>First Amendment.</u>

[9] In *Thornburgh,* the Court held that the *Turner* rational basis test rather than the *Martinez* substantial government interest test applied to incoming prison mail. *Thornburgh*, 490 U.S. at 413-14. In their

disapproved the publication.  *Martinez,* 416 U.S. at 418-19; *Bonner v. Outlaw*, 552 F.3d 673, 677 (8th Cir. 2009) (*Martinez* due process protections apply to all forms of incoming mail and publications).

It is undisputed Plaintiff received written notice the Cummins Unit rejected *Rider Waite Tarot* and that he was able to appeal that ruling to the Central Office Committee, which was not involved in the initial determination.  Thus, the first and third due process requirements are satisfied.  However, as to the second element, Plaintiff says he was denied a reasonable or meaningful opportunity to appeal because the unit's rejection notice said *Rider Waite Tarot* contained "Section 4, B, 5: Symbols" and "Section 4, B, 10: Depicts Nudity," without describing what the symbols and nude images were.[10]  (Doc. 45-4 at 2.)

The amount of process due "is determined by balancing the specific interest affected, the likelihood the challenged action would result in an erroneous deprivation of that right, and the burden of providing additional procedures, including administrative costs and burdens." *Bonner,* 552 F.3d at 676; *see also Senty-Haugen v. Goodno,* 462 F.3d 876, 886 (8th Cir. 2006).  The specific interest affected here is the freedom of speech, which is a fundamental constitutional right. *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 761 (8th Cir. 2019).  And I agree with Plaintiff that Defendants could have done a more thorough job of explaining the prohibited "symbol" was a five-pointed star, which is associated with gang activity, and the "nudity" was drawings of topless women.  Providing that brief, additional information would not have increased administrative costs or burdened prison officials.

However, the key issue here is whether Defendants' brief description, without supporting

---

[10] Plaintiff also says there was no place on the form to write why he was appealing.  This argument has no merit because there is no evidence Plaintiff was prohibited from writing his reasons for appeal on the back of the form or on a separate piece of paper attached to the form.

details, increased the chance Plaintiff's freedom of speech would be erroneously deprived. I conclude the answer is no because it is undisputed the Central Office Committee, which <u>reversed</u> the Cummins Unit's rejection of Plaintiff's other tarot book and several other publications ordered by other prisoners, completed an independent and thorough review of *Rider Waite Tarot* and agreed that it contained images that fell within the ADC policy's definition of "STTG" materials and "nudity." (Doc. 45-5.) In other words, there is no indication in the record the appeal was merely a rubber stamp of the unit's initial determination. And, importantly, Plaintiff has not explained how additional details from the Cummins Unit (which he now has) would have helped him prevail on his appeal before the Central Office Committee. For these reasons, I conclude Defendants provided Plaintiff with a reasonable and meaningful opportunity to challenge the rejection of his book. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("due process is flexible and calls for such procedural protections as the particular situation demands"); *see also Smith v. Hobbs*, No. 5:14-cv-00071-DPM-JJV, 2015 WL 6445029, at *6 (E.D. Ark. July 13, 2015) *rec. adopted in part*, 2015 WL 6453150 (E.D. Ark. Oct. 23, 2015) (finding a prior but substantially similar version of the ADC's publication review policy provided sufficient procedural due process protections). Accordingly, I conclude Defendants are entitled to summary judgment on Plaintiff's due process claim.

### E. Equal Protection Claim

Plaintiff says Defendants violated his Fourteenth Amendment Right to equal protection when they rejected *Rider Waite Tarot*. To proceed to trial on that claim, Plaintiff must have evidence: (1) he was treated differently from similarly situated inmates; and (2) the different treatment was the result of intentional and purposeful racial discrimination. *See In re: Kemp*, 894 F.3d 900, 909-10 (8th Cir. 2018); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir.

13

2008).  Plaintiff does not claim he was prohibited from receiving *Rider Waite Tarot* while other prisoners were allowed to do so.  Instead, he says "the entire inmate prison population, including its worst inmates housed in administrative segregation" are allowed to possess unspecified "personal property" that depicts "sexually explicit" material.  (Doc. 34 at 2.)

Plaintiff's argument is flawed because *Rider Waite Tarot* was rejected for containing "nudity" and "STTG" symbols, and not because it had "sexually explicit" material, which is separately defined by Admin. Dir. 20-04.  (Doc. 45-1 at 2.)   Also, Plaintiff has not offered any evidence to support his vague allegations that he was treated differently from similarly situated prisoners.  *See Gilani v. Matthews*, 843 F.3d 342, 348 (8th Cir. 2016) (to establish an equal protection violation, the "two groups must be similarly situated in all relevant respects").  To the contrary, is undisputed that on April 29, 2021, the Central Office Committee decided that several other inmates were prohibited from receiving publications containing prohibited symbols and nudity.  (Doc. 45-5.)  And Plaintiff's contention that the Cummins Unit allows prisoners to watch movies with nudity and gang activities goes to the first factor of the *Turner/Thornburgh* test, rather than forming a basis of an equal protection claim.  Because there is no evidence Plaintiff was treated differently from similarly situated prisoners, I conclude Defendants are entitled to summary judgment on Plaintiff's equal protection claim.  *See In re Kemp*, 894 F.3d at 909 ("Absent a threshold showing that she is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim"); *Habhag v. Hon*, 536 F.3d 963, 967 (8th Cir. 2008) (affirming summary judgment where a plaintiff failed to produce evidence demonstrating that he was treated differently than similarly situated individuals).

F.    **Religion Claims**

Plaintiff says Defendants violated his right to freely exercise his religious beliefs, under

14

the First Amendment and RLUIPA, when they rejected *Rider Waite Tarot*.  To proceed to trial on

that claim under either the First Amendment or RLUIPA, Plaintiff has the initial burden of

establishing the restriction substantially burdens the exercise of his sincerely held religious

beliefs.[11] *Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015).  This is often called the "threshold issue."

To constitute a "substantial burden," the Defendants' action must:

> significantly inhibit or constrain conduct or expression that manifests some central
> tenet of a person's individual religious beliefs; must meaningfully curtail a person's
> ability to express adherence to his or her faith; or must deny a person reasonable
> opportunities to engage in those activities that are fundamental to a person's
> religion.

*Patel,* 515 at 807 (8th Cir. 2008); *Murphy*, 372 F.3d at 998.  Importantly, the prisoner's religious

beliefs may be personal and not necessarily "shared by all of the members of a religious sect."

*Holt,* 574 U.S. at 362; *see also* 42 U.S.C. § 2000cc-5(7)(A).  And, whether the inmate has

alternative means for practicing his religious beliefs are not part of the initial, substantial burden

analysis.  *Holt,* 574 U.S. at 361-62.

Plaintiff, who is Muslim and the former prayer leader of the Islamic Community at the

Cummins Unit, has not explained how the tarot cards are part of his personal, sincerely held

religious beliefs or, more importantly, how not having a copy of *Rider Waite Tarot* substantially

burdens the exercise of those sincerely held religious beliefs.   Instead, Plaintiff says: "I have a

first amendment right to study any religious publication I choose, regardless of what my own

---

[11] If the threshold analysis is satisfied, then under the First Amendment the issue is whether the
religious restriction is "reasonably related to legitimate penological interests," which is the same
standard applied to a freedom of speech claim.  *O'Lone v. Estate of Shabazz*, 482 U.S 342, 349
(1987).  But under RLUIP, which is more favorable to prisoners, the issue is whether the religious
restriction is the "least restrictive means of furthering" a "compelling governmental interest."  42
U.S.C. § 2000cc-1(a).

personal religion is." (Doc. 53 at 7.) That is legally incorrect. Plaintiff has the burden of proving the denial of *Rider Waite Tarot* substantially burdened the exercise of <u>his</u> sincerely held religious beliefs. Because Plaintiff has not done so, I conclude Defendants are entitled to summary judgment on his free exercise claims under the First Amendment and RLUIPA.[12]   *See Conway v. Alford,* No. 16-1597, 2017 WL 512462 (8th Cir. Feb. 2017) (affirming summary judgment when a prisoner failed to show how confiscation of a publication substantially burdened his religious exercise).

V.    **CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that:

1.    Plaintiff's Motion for Partial Summary Judgment (Doc. 32) be DENIED.

2.    Defendants' Motion for Summary Judgment (Doc. 45) be GRANTED; Plaintiff's claims against Defendants Payne, Musselwhite, Pierce, Babcock, Culclager, and Robinson be DISMISSED with prejudice; and this case be CLOSED.

3.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

DATED this 8th day of February 2023.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

---

[12]  Furthermore, even if the Court were to find Plaintiff satisfied the threshold issue, the Eighth Circuit has already found the ADC's policy prohibiting inmates from possessing tarot cards outside of the chapel does not violated RLUIPA or the First Amendment. *See Singson v. Norris,* 553 F.3d 660, 662-63 (8th Cir. 2009) (prohibiting personal possession of tarot cards in prison furthered the ADC's compelling government interests in preventing "gambling, trafficking, psychological control, and gang symbols" and was the least restrictive means for furthering those compelling government interests). And it is likely that holding would equally apply to the rejection of *Rider Waite Tarot.*